Case number 21-5449, USA v. Steve Braden. Argument not to exceed 15 minutes per side. Mr. Hawley, you may proceed for the appellant. Good morning. Good morning. May it please the court, I'm Michael Hawley. I represent Mr. Steve Braden in this appeal. And I'd like to reserve three minutes for rebuttal, please. Very well. Now, Mr. Braden was convicted of an ordinary street crime. He possessed, as a felon, he possessed three guns in furtherance of the possession of 10 grams of crack for distribution. But he got an extraordinarily harsh sentence of 45 years, which is possibly the rest of his life. And that sentence was based, at least partly, on the 101 powder to crack ratio that everyone's familiar with, of course, that Congress created back in the 80s. Shortly after his sentencing, Congress renounced that 101 ratio because it was unjust, too harsh, unfair, and allowed, and then eventually allowed people like Mr. Braden to have re-sentencing under 18 to 1. And the 18 to 1 dropped his sentencing range by five years. The bottom of the range went from 35 to 30 years. So the Supreme Court says that the advisory guideline range is the anchor to sentencing discretion. So one would expect when the anchor drops, so will the sentence, absent some special justification. And in this case, when Mr. Braden's anchor dropped by five years, the government offered him a sentence reduction of 15 years, from 45 years down to 30 years. But Mr. Braden didn't take that. He wanted the judges to decide, wanted to get less. And the judge kept the 45-year sentence in place. The total sentence remained 45 years. Of course, we appealed because... That's because of the gun charge, right? Because the drug sentence was reduced. Yes, Your Honor. But I agree that the total sentence stayed in place. Yes. And, of course, the offer was for a reduction that would be meaningful. It would be down to 30 years for everything. It would have been 25 years... Well, what did the government... The government offered that, and he didn't take it, right? That's right. That's right. Of course. Of course. Of course. With all the dice, sometimes you deal with what comes up. Of course. Of course. And we're not complaining about not necessarily getting 30 years. We're complaining that it was left at 45 years, despite the fact that Congress's action reduced his range by five years. But Congress reduced the drug part, not the gun part. Sure. Sure. But it reduced his range for everything. Now, the gun range reduced, as the supplemental PSR specifies, for the crack and the gun charge, the new range is 25 years to life, plus five for the 924C. So it reduced his gun range as well. It reduced everything. In fact, previously, his gun range by itself would have been about 22 years. The gun range you're talking about is the felon in possession gun. Yes. Sorry. Not the furtherance of a drug crime. That's right. That's the five years extra. Yes. Yes. Yeah. Yes. That's right. And, you know, it's really, you know, and originally that the crack, the impact of having the crack in connection with the gun is what drove his sentence so high to begin with. If it had just been felon in possession as an armed criminal, his range would have been roughly 22 years, advisory guideline range. So it was originally 35 to life because of the crack and because of the 101 ratio, it was 35 to life rather than 30 to life. And, you know, the district judge, if you read, all we have is a written order, and if you read that order, it says very little. I mean, it gives some procedural background, but when it comes down to it, it says almost nothing, and it doesn't show that he reasoned through. The Supreme Court in Concepcion confirmed that the district court in a case like this has to show that it reasoned through the party's arguments. And his written decision doesn't show that he was aware of important facts or non-frivolous arguments, and it didn't even show that he was aware of his ability to reduce the 922G sentence. So is there any case law that you can cite that says, all right, when there's been a reduction under the First Step Act for the crack cocaine that he has to reconsider the felon in possession gun thing at the same time? I've cited cases, a Fourth Circuit case called Gravatt, a Seventh Circuit case whose name I've described. But we haven't decided that issue. You have not decided, Your Honor. And, you know, Judge Clay recently, I put it in the 20-J letter, Judge Clay voiced support of that. I think Judge Stranch did more or less, too. It has not been decided, but the Fourth and Seventh Circuit have given good reason for it. The government, in this case, assumed that the district court would have that power when it offered 30 years, and when it argued in the alternative for a reduction to 35 years. I'm talking about a total sentence. So throughout this case, the government has assumed that the judge had that power. You're making, as I understand it right now, a substantive reasonableness argument, correct? I mean, I'm making both. Are you talking about, like, right at this moment? Right at this moment. I know you're making both in your brief. I'm trying to figure out what you're asking us how to reverse. In other words, what's the vehicle? And right now, are you saying substantively unreasonable or procedurally unreasonable? I'd say you're on our main argument, and right now I'm really talking about procedural unreasonableness. Okay, and what specifically? The judge doesn't give, he doesn't show that he reasoned through the arguments. All right, so one is this very important fact that I mentioned, that Congress's action reduced his range by five years, but you can't even see that in the surface of his opinion. But does it have to? I mean, as you pointed out, it's in the supplemental PSR. We assume that he understands what's in the record. He issued an opinion with, I agree, cursory reasoning, but that happens all the time in these cases. And so... Your Honor, I don't think we can assume that he saw the supplemental PSR in this case. He never mentioned it. There's no necessary process. Your Honor, I think it's true, because when he talks about the fact that his range, he doesn't say his reduced range. The judge says his revised range. He doesn't even acknowledge it's reduced. He says the revised range is 360 life, as the parties agree. It's as if he just read our pleadings and sees we agree it's 360 life. That's what the PSR said. That's what the PSR said, but in the judge's order, he pulls that from our briefs. He says, as the parties agree, the revised range is 360 life. Did the parties so agree? Yes, Your Honor. Yes, yes, yes. I'm not sure. Where's the error? The error is that, I mean, for one thing, he doesn't show that he's even aware there's been a reduction due to Congress's action. He said revised range. He says revised. He never acknowledges there's a five-year drop. He never even acknowledges it's a drop. It's 360 to life. I'm not sure I follow you. I'm sorry to interrupt you, but before it was 480 to life, right, or something like that. He got 480. It was 35 to life, 35 years to life. Okay. And now it's 30 to life. Correct? Yes. So he says revised, reduced. I mean, why does it matter which is the one? Because he never even says the previous range was 35 to life. He never acknowledges that there's been a reduction, and he never says, despite Congress's reduction, I'm going to. But what requires him to do that? I'm not sure I follow you. If the court gets their ultimate range right, what requires them to say what the previous range was? In this court's case, as in, like, Marty Smith and Domench, it was important to the judges when they're looking at the non-reduction of a sentence that Congress took action to reduce the range, and the judge didn't discuss that, and didn't give a reason to basically disagree with Congress. He's lost as to why it matters if he gets the range right. Your Honor, it's because the judges disagree. Congress has reduced his range. He never says, despite Congress doing this, I want to stick to this. He said under the First Step Act. I'm almost positive in here. Sure, sure, sure. He said under the First Step Act. Sure, sure. Every district court in America right now knows what the First Step Act did. Sure, of course, of course, of course. He never gives a reason to say, all right, well, despite his range coming down, I'm going to keep it the same. Now, he also doesn't address our other non-frivolous arguments, and when I was going through the briefing last night, I noticed he cited some of our pleadings, but he didn't cite to our main, what's called the brief on the resentencing, docket entry 198. He didn't cite to that one, which is really the most full explanation of our sentencing arguments, and he may have missed that because he didn't discuss the fact of this. Did you file a motion to reconsider and say, hey, you missed 198, which he does cite, by the way. He cites 189. He cites, on the very first page he says, defendant supplemented his motion documents 184, 198, 207, and 208. Oh, I'm sorry. I'm sorry. Well, nonetheless, whether he was aware of this pleading or not, he did that. Now, in the Latham case, the defendant got a reduction from life to 360, which is the bottom of his range. Mr. Brayden got no reduction, meaningful reduction, didn't go to the bottom of his range. In Latham, the judge did not address non-frivolous arguments, and the case was remanded to address those. What other non-frivolous arguments did you raise that you say the district judge did not discuss? We made an argument about the significance of the government's offers of both 30 years and 17.5 years back before trial. We made an argument about what obligates a district court to consider rejected offers. I cited a case, I think it was called Pedago or something. It starts with a P. It indicates from this court that a government's representation of what would be a satisfactory sentence is That's different. That's in court or in a pleading. If the government says you should give 40 years or 30 years, the district court has to consider it. They can reject it just like they can reject yours. But that's different than a rejected offer the government made. We never consider, or district courts never consider previous plea agreements when they're accepting a plea agreement to determine if the plea agreement's fair. They never consider, the government often says, and you'll agree with this, I can't remember if it happened in this case, if you go to trial, we're also going to seek this enhancement. And even though they offer you a plea that's 15 years, if you go to trial, we're going to seek 30. Courts don't consider the rejected plea agreement, and they're not obligated to. I think that, I mean, under Concepcion, of course, the judge can consider basically anything. And this would be relevant. This is a massive tax, a massive penalty that he got to begin with for going to trial. A massive penalty. I mean, this is the rest of his life instead of a 17-and-a-half-year sentence. And this penalty, he's getting this extra 15 years he got by rolling the dice. I mean, it's a massive amount. If he's sitting in prison and he gets this order, and it doesn't acknowledge that Congress said, you know, your sentence should be five years shorter, essentially. But I disagree with that. And it doesn't say, you know, you've argued about your courses and stuff. And you've argued about the offers. And you've argued that murder only gives 20 years. And he doesn't say anything about that. And then also doesn't even make it clear that he recognizes that he can reduce the 922G sentence. Because the way that last paragraph is written, it sounds like if you just read this order, you would think that his new range is 360 life. I'm giving him 360. He would like more off, but I'm not going to give it to him. But that's not what's happening at all. That's how it reads. That's how you look at it. But that's not what's happening. What other non-frivolous arguments do you claim he didn't address? We made an argument about his rehabilitation, the courses he was taking to address his anger issues. But he did address, like the Osborne case we have out of our circuit, on that issue he specifically points to his post-sentencing conduct and the numerous disciplinary infractions he had. And in Osborne we said that's sufficient, right? The government cites it. Yes, Your Honor. But every case is different. And I don't know, did Osborne, we submitted these certificates and they went directly to the character flaw that Judge Wiseman identified years ago. And you'd think there would be some acknowledgement of it. He doesn't, I mean, under Osborne he doesn't have an, if he references post-sentencing conduct, we can assume he considered both sides of that argument. Your Honor, you know, like I said, when he sets out the arguments, he describes the government's arguments and says nothing about ours. He says the government says this. He doesn't even say the government is right about it. He says the government says this. He doesn't even say I'm buying what they're arguing. He just says they say that. And then he says, well, the crime is serious. His criminal record is bad. I'm leaving. He doesn't say I'm leaving it the same. He says I'm giving the reduction that looks like on the surface is the bottom of the range. I know I'm out of time. All right. Any further questions? Judge Gelman? No. All right. Thank you. Did you reserve? I reserved three minutes, Your Honor. Three minutes. Very good. Good morning. Morning. Thank you, Your Honor. May it please the Court. Cecil Van Devender on behalf of the United States. The district court's order here was fully consistent with Concepcion. It was both procedurally and substantively reasonable and should therefore be affirmed. What Concepcion reiterates is something this court has said several times, which is that when a district court rules on a sentence reduction motion, such as a First Step Act motion, it is not required to address every argument. It has wide discretion to say what it thinks is relevant and explain its reasoning. What about that the supplemental PSR says 360 to life on both, and yet he doesn't even address the gun count? Well, he certainly acknowledges at the bottom of page one of the order what the sentences were. He says Judge Wiseman sentenced Braden to concurrent terms of 40 years imprisonment on counts one and two and a consecutive term of five years imprisonment on count three. Turning to this last argument that my friend made about whether Judge Campbell, who ruled on the First Step Act motion, whether he even understood that the reduction to the applicable statutory maximum on count two wouldn't have any kind of overall effect on the sentence. I think right there it's very clear. He's saying you've got 40 years on one and two plus five on count three. I'm going to reduce it on count two. And I think the notion that he wouldn't have understood that that wouldn't also reduce it on count one. No, I'm sorry. So I think he understood that. The point being he didn't acknowledge anywhere that the gun charge was also reduced. So maybe I wasn't clear. Well, I think he acknowledges, as you pointed out, Your Honor, that the overall range is reduced and that's applicable to all of the counts. And the fact that he doesn't specifically acknowledge his authority to reduce a sentence on a non-covered count if the range on that count or the sentence on that count had been driven by something related to a covered offense is unsurprising because, as my friend noted, it was completely undisputed. The government's response said the court has authority to reduce the total sentence here. We think you shouldn't, but if you do, here's what we recommend you reduce it to. And the defendant's reply sort of says, look, it's undisputed. The government acknowledges. You can reduce this overall sentence. So the fact that Judge Campbell didn't say, I know that I have the power to reduce the sentence on both counts one and two, but I declined to do so, is I think unsurprising here. There's been some discussion as well in the briefs and during the argument about Judge Campbell's kind of overall familiarity with the case, whether he reviewed the supplemental PSR, how familiar he was with the prior proceedings in front of Judge Wiseman. Let me just kind of add two quick data points to that. One that's referenced in passing in the brief, but maybe warrants more attention, is the order that Judge Campbell issued when denying Mr. Braden's 2255 motion in the separate case. That's 311 civil 1006. So at docket entry 125, Judge Campbell issues a 58-page memorandum of opinion where he walks through the entire history of the case in pretty exacting detail and drops a footnote on page one of that opinion saying, Mr. Braden has filed a separate motion for a sentence reduction in the First Step Act. I will address that in a separate order. And so I think to the extent that the court has any hesitation or concern about whether Judge Campbell had sufficiently familiarized himself with the case, and again, I think as Judge Thwar noted, normally a reviewing court would certainly assume that a district judge would have done so. But here there's very concrete evidence showing Judge Campbell's familiarity with this case. And then with regard to the supplemental PSR itself, I think at docket entry 191, Judge Campbell orders the preparation of a supplemental PSR. And so the notion that he would have ordered the preparation and then somehow neglected to review it, I think is highly speculative. The order we're talking about, though, by Judge Campbell is only four pages long, right? That's correct, Your Honor. And what about this case of the United States v. Wallace, which is a 2010 decision of our court? I quote, it says, when a defendant raises a particular non-frivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it. And I guess that's the essence, I think, of what the defense is saying here, that that's what Judge Campbell didn't do here. I think that's right, Your Honor. But I think it's important to distinguish between the context of the initial sentencing direct appeal and the appeal of a ruling on a sentence reduction motion. And so what this court has said in a number of cases and what the Supreme Court says in Chavez-Mesa and Concepcion is a reviewing court can look at the entire record. It doesn't have to limit itself strictly to the order addressing the resentencing motion. And when it's clear from the record as a whole that these arguments were considered, so for example, arguments about the relative culpability of the offense, you can look to what Judge Wiseman said at the original sentencing hearing in addressing that. And I think that's kind of implicit in the fact that, you know, time after time, this court has affirmed even form orders much shorter than this one that have denied sentence reductions in first effect cases. Right, but when Judge Wiseman did the original sentencing, obviously he had not been in prison for any length of time. So what about his arguments about all his rehabilitative efforts in courses and things? That wasn't obviously considered by Wiseman. That's correct. Where is it that it was considered by Campbell? Well, I think it's consistent with Osborne, what Judge Campbell said when he addressed the 11 new disciplinary violations on top of, I believe, the 29 that Judge Wiseman had made reference to at the time of the original sentencing hearing. The existence and the reference by Judge Campbell to those intervening disciplinary violations that occurred post-sentencing under Osborne's officially response to this. Where is that in his four pages? On page ID 1363, this is the fourth page, it says, the government recommends the sentence imposed by Judge Wiseman should not be reduced. And then the next sentence, the government notes that Braden has been involved in numerous disciplinary infractions during his current incarceration. And that's it, isn't it? That's the extent of it, yes. But again, the supplemental PSR documented all those. There was even a prior supplemental PSR from a prior 3582C motion that had a number of disciplinary infractions. So given the existence of those infractions and the reference to them, albeit in passing, I think that sufficiently addresses what, you know, the thrust of the argument was at sentencing, Judge Wiseman thought that Mr. Braden had a long and violent history and an inability to control his temper, a high likelihood to recidivate. Basically, the argument under the First Step Act motion was, well, things have changed, he's now proven via these certificates that he can control his temper, he's not a threat to recidivate, and I think it's perfectly reasonable and sufficient for the district judge to respond by saying, actually he has a number of disciplinary violations since then. Your point on Osborne, isn't this exact argument the one presented in Osborne and rejected? In other words, in Osborne there are 14 disciplinary situations. The defendant in that case presented his rehabilitation efforts. And our court said as long as he references what's happened post-sentencing in some form, and in that case the district court only referenced the 14 incidents, that was enough to know that the district court considered them all and rejected it. Yes, Your Honor, that's correct. And your guy has, you said 11 now and then 28 before, so 39 total? That's right, Your Honor. So I think 11 had been documented in the document. Post-sentencing. Yes, our post-sentencing. Yes, Your Honor. Is it a little odd that though, despite the first step back and all that, he's still sentenced to 45 years? Well, Your Honor, I think one way to look at it is to look back at the first sentencing hearing, and I did a little sort of control F word search of that transcript, and what you'll find is the words crack and cocaine base are not used a single time in that sentencing hearing. What you do see over and over again is violence, violent history, criminal history, terms like that. And so this is not a case that, you know, we're not disputing that the changes of the Fair Sentencing Act of 2010 shifted the statutory range for the amount of crack involved, and that has sort of a cascading effect on the guidelines. We're not disputing that. But in terms of what the sentence was really about, it was really about Braden's violent criminal history, his repeated recidivism, his inability to conform his conduct to the law. And so the fact that the ratio of crack to powder changed really doesn't affect any of that analysis. But I mean, it does make the point that even people convicted of murder often aren't sentenced to more than half of what this guy's been sentenced to. That is sometimes true. But in terms of substantive reasonableness, Your Honor, you know, what this court has said time and again is if the sentence is within the applicable range, it's subject to presumption of reasonableness here. Even post-FSA, it's within the range of 360. Because I gather his upper range is still life, is that right? That's correct, Your Honor. So it's going to be hard for substantive unreasonable. I think we're more concerned about whether procedurally the district court gave sufficient explanation. And, Your Honor, on that point, one recent case I'd point to that the defendant cites in a 28-J letter is United States v. Jackson, which resulted in a vacature and remand. But there, it's important to note that that defendant was sentenced to 300 months and his original range was 200 to 235. After the first step back, his range became 160 to 185. This court said and looked at the opinion denying the reduction, leaving it at 300 even against a range of 160 to 185. And it was a pretty comparable level of analysis in that case in Jackson to what Judge Campbell said here. And this court said that explanation is procedurally reasonable. It then vacated and remanded on substantive reasonableness grounds. But again, that's a 300-month sentence against a range of 160 to 185, not subject to a presumption of reasonableness. So very distinguishable on those grounds from this case, which is subject to presumption. But the analysis even there on procedural reasonableness tends to point in the direction of affirmance here. Okay. Any further questions? Mr. Gilman, Judge DeParle. Thank you, Your Honor. All right, rebuttal. Your Honor, the government here is doing exactly what's been the subtext of this whole case. They're guessing that Mr. Braden is serving 45 years due to violence against women. I mean, they are guessing. Counsel says he did a search through the transcript for the words violence. I think that was repeated over and over by the prosecutor. If you look at Judge Wiseman's two- or three-page explanation, he doesn't say it's because of violence. Judge Campbell certainly says nothing about violence. And if that's going to be the reason someone serves the rest of their life in prison, it ought to be stated somewhere. And it's never stated. As Judge Gilman mentions, and it was our argument for violence, for murder, the normal sentence, average sentence, is 21 years. He got this long sentence because his range was sky high. It was sky high because it was a gun and drug case under the 101. But it still remains sky high. I mean, it's still within the range. It still remains sky high, Your Honor, yes. But, you know, for Mr. Braden, five years is important. No, I understand that. And it dropped by five full years, and you would think that he would get something for that. But if the range is advisory and it's discretionary with the judge, I mean, it's your burden to establish an abuse of sentencing discretion. Yes, Your Honor. It's not automatic just because the range drops by five that the judge has to exercise his discretion correspondingly. No, of course not. But this Court's cases, Marty Smith, Doe Mensch, and Michael Johnson, although there was substantive unreasonableness, they show that it's important for the judge to address this change, to say something about it, in addition to our other arguments, which were about the classes. You know, just to talk about his violations in prison, the last one, according to the supplemental PSR, had been in 2015, which was four full years before this resentencing, and, you know, four or five years. But wasn't that when it was prepared? It was prepared, I believe, in 2019, Your Honor. Is that right? Maybe I misread it. It was prepared, yeah, it was prepared in 2019, and the last one was in May 2015. So it's, you know, I mean, I think we did have some showing, there was some showing in the record of some changes in him as he grew older, as he grew nearing his 50s, I think. And for him to be denied any reduction with such a cursory order is, it's not the kind of process that the Supreme Court's asking for in Concepcion when they say you need to reason through the party's arguments. And there's a good reason for that on all sides. One is to satisfy the defendant who's serving the rest of his life in prison, and the other is to expedite this review process, because here we are guessing or arguing about, well, can we guess this nuance from a footnote in a 2255 filed somewhere else, or by doing a Control-F search for the word violence, and the judge should put this in the order, and then we all know what he did and thought, and if he'd written another page or two, it all would have, you know, it could have been there if he really did know he had this authority and recognized the arguments. Yeah, maybe the ultimate lesson here is your client shouldn't have gotten in a domestic dispute with his girlfriend. Oh, yeah. That was a bad start to this. All right. Further questions? Yeah. Thank you, Mr. Drescher. Thank you, Your Honor. All right. The case will be submitted. I believe that concludes the oral argument docket for this morning. The committee may adjourn the court. This honorable court is now adjourned.